**Arthur KRAUSE, et al., Plaintiff,**

v.

**James A. RHODES et al.,
Defendants.**

**Civ. No. C 70–544.**

United States District Court,
N. D. Ohio, W. D.

Feb. 20, 1975.

Clyde Ellis, Columbus, Ohio, Nelson G. Karl, Steven A. Sindell, David E. Engdahl, Cleveland, Ohio, for plaintiff.

R. Brooke Alloway, Charles E. Brown, Columbus, Ohio, Burt J. Fulton, Cleveland, Ohio, James A. Laurenson, Columbus, Ohio, for defendants.

## MEMORANDUM

DON J. YOUNG, District Judge.

The defendants have filed a motion for a protective order preventing the deposition of the custodians of the records of the Ohio National Guard and the Ohio State Highway Patrol, and also to quash a *subpoena duces tecum* served upon the Clerk of the Court of Common Pleas of Portage County, Ohio requiring production of documents related to the Grand Jury inquiry into the matters giving rise to these actions.

The defendants' claims are that the documents of the Ohio National Guard and the Ohio State Highway Patrol were prepared in anticipation of litigation, and are protected from disclosure in the absence of a showing of good cause. Also, that the documents qualify as work product of the defendants' attorneys, and as such are protected from discovery. With respect to the Grand Jury matter, defendants' claim that the materials are privileged under the ancient rule of secrecy of grand jury proceedings.

The plaintiffs dispute all of the defendants' claim alleging that the materials sought from the National Guard and State Highway were neither prepared in anticipation of litigation nor as work product of the defendants' attorneys, and that the Grand Jury secrecy pertains to the proceedings, and not to documents which were laid before it.

At the outset, it ought to be understood that this Court is a firm adherent to the concept of "open file" discovery. The Federal Rules of Civil Procedure are based upon the idea that a trial is a search for truth, not a game or a battle of wits. Some four decades of practical experience have convinced this Court that the need for trial frequently disappears once both sides have a full and complete understanding of the facts.

Without entertaining any hope of that occurring in this case, still it must be recognized that the present case is one of tremendous complexity both of fact and law. In the heavy fog of emotion which engulfs it, seeing objectively what really happened will be difficult at best. No scrap of information available to anyone involved should be held back until the time of trial. The sooner both sides are in complete possession of all available information, the greater will be the chances for an ultimate just resolution of the issues. It is already far later than it should be to conduct discovery, for time has dimmed memories, reworked ideas, and hardened attitudes. Long periods of time almost always result in conscious or unconscious rationalization which re-shapes the truth to make it more comfortable for parties and witnesses. The good points become clearer and the bad points are blotted out.

So far as this Court is concerned, no matter who gathered and recorded information close to the time of the tragic events involved in this litigation, and no matter what their reason or purpose for

gathering it, it must be fully disclosed to all parties to this litigation. The parties should be advised, and govern themselves accordingly.

■ Obviously, broad discovery will disclose large quantities of material which would be completely inadmissible in evidence, but that is a matter of no significance under the Rules of Civil Procedure, or in reality. In order to sort the wheat from the chaff in this case, many bushels of hearsay and opinion will have to be winnowed in order to produce a few grains of admissible evidence. However, it is very likely that unless the inadmissible evidence is fully revealed, carefully examined, and viewed in the context of the whole problem, it will be impossible to judge accurately what evidence is admissible, and what weight ought to be given to it.

Obviously, it is essential that both sides should be able to study and evaluate before trial all the substantially contemporary investigation reports. No doubt many of those were made more for the purpose of sustaining the positions of persons involved than of obtaining objective facts. Either way, it cannot very well be said that these investigations were made in anticipation of this, or of any, litigation, for at that time the only concern of everyone was to try to get and preserve all the facts, so that they would be available to everyone in the future.

The defendants may not claim that any of these investigations, and the documentary evidence in connection with them, are protected either as work product of their attorneys, or as having been gathered in anticipation of litigation.

The problem of the Grand Jury materials is somewhat different, because this Court considers the matter of the secrecy of grand jury proceedings a most important one. The modern trend towards ignoring or inventing reasons of due process to defeat this ancient rule is not one which this Court follows, or approves. However, in considering problems of admissibility of evidence, it is always necessary to consider the totality of the circumstances. In this case, to begin with, the only thing sought is the documentary evidence which was laid before the Grand Jury. The Grand Jury made a report which badly damaged, if it did not destroy, the secrecy of those of its proceedings which relate to the instant case. When the reason for a rule ceases to exist, so does the rule itself.

The overriding importance of having every possible scrap of evidence available to all of the numerous parties to this case, hereinabove alluded to, overwhelms any reason for secrecy except as to the really basic matter, the actual deliberations and reasoning of the Grand Jury. But these would neither be evidence nor could they lead to evidence. Thus it is not necessary to invade the real secrecy of the Grand Jury in order to overrule the defendants' motion.

As reflected in the Order of this Court filed February 13, 1975, and for the reasons set forth in this memorandum, the Court has already overruled defendants' motion for protective order and to quash.